UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANNY L. GOODWIN**, **MACHELLE GOODWIN, IAN GOODWIN** AND **HAIDEN GOODWIN** | CIVIL ACTION NO.: 2:11-cv-2697 |
| | SECTION: |
| Plaintiffs | JUDGE: |
| | MAGISTRATE: |
| VS. | |
| TEXACO, INC., EMPLOYERS INSURANCE COMPANY OF WAUSAU, AND ABC INSURANCE COMPANY | |
| Defendants | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Complaint**

The plaintiffs, **Danny L. Goodwin, Machelle Goodwin**, **Ian Goodwin** and **Haiden Goodwin** through their attorneys, file this Complaint as follows:

**Parties**

1.

A. *The Plaintiffs*

The plaintiffs are:

   i. **Danny L. Goodwin** is of full age of majority and domiciled in Tangipahoa Parish, Louisiana

   ii. **Machelle Goodwin**, wife of Danny Goodwin is of full age of majority and domiciled in Tangipahoa Paris.

   iii. **Ian Goodwin**, adult child of Danny and Machelle Goodwin is of full age of majority and domiciled in Tangipahoa Parish.

    iv. **Haiden Goodwin**, adult child of Danny and Machelle Goodwin is of full age of majority and domiciled in Tangipahoa Paris.

B.    *The Defendants*

The defendants are:

i.    **Texaco, Inc.,** a Delaware corporation, individually as the successor in interest to the Texas Co., formerly registered to do business in Louisiana, whose agent for service of process is Texaco, Inc.. 575 Market St., San Francisco, CA 94105.

ii.    **Employers Insurance Company of Wausau**, the insurer of Ormet Corporation. and its deceased **Executive Officers**: **M. Sullivan, general foreman; Charles F. Jacques, plant manager / division manager; William Brown, environmental control specialist; F.G. Sikes, manager of technical services (hereinafter collectively "Executive Officers")** and is liable to Petitioners pursuant to the Louisiana Direct Action Statute La. R.S. 22:1269 formerly known as La. R.S. 22:655.

iii.    **ABC Insurance Company**, the insurer of Ormet Corporation and its deceased **Executive Officers**: **M. Sullivan, general foreman; Charles F. Jacques, plant manager / division manager; William Brown, environmental control specialist; F.G. Sikes, manager of technical services,** and is liable to Petitioners pursuant to the Louisiana Direct Action Statute La. R.S. 22:1269 formerly known as La. R.S. 22:655.

**Jurisdiction and Venue**

2.

This Court has jurisdiction under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.

This Court has personal jurisdiction over the defendants who are doing business in the district or who did business in this district at a relevant time.

4.

The defendants are incorporated under the laws of Delaware and North Carolina, with their principal places of business in Texas, North Carolina, and Wisconsin. Plaintiffs are domiciled in Tangipahoa Parish, Parish, Louisiana. None of the Defendants are domiciled in Louisiana. Therefore, there is complete diversity in this matter.

5.

Venue is proper in this district under 28 U.S.C. § 1391 (b)-(c) because the defendants are doing business in this district.

**Background**

6.

Mr. Danny Goodwin worked at Ormet Corporation in Burnside, Louisiana. Ormet made aluminum and alumina. Danny Goodwin worked in the pump room as a millwright breaking down pumps and cleaning in a vat filled with benzene from 1973 to 1976.

7.

**Texaco, Inc**. supplied benzene, grease, and oils in 55 gallon drums to Ormet Corporation.

8.

**Employers Insurance Company of Wausau and ABC Insurance Company** for all pertinent times were insurance providers for the acts and omissions of **Ormet Corporation Executive Officers**, including but not limited to, the deceased **Executive Officers**: **M. Sullivan, general foreman; Charles F. Jacques, plant manager / division manager; William Brown, environmental control specialist; F.G. Sikes, manager of technical services,** and are liable to the Petitioners pursuant to the Louisiana Direct Action Statute. LA R.S. 22:655.

9.

The negligence and misrepresentations of **Texaco Inc**. and **Ormet Executive Officers,** resulted in Mr. Goodwin's exposure to high levels of benzene.   As a result of his exposure to benzene, Mr. Goodwin suffered damage to his bone marrow and blood forming organs, resulting in Multiple Myeloma.

10.

At all material times herein, defendant, **Texaco Inc.,** was a manufacturer, distributor, seller and, supplier, of benzene or benzene-containing products.

11.

During Mr. Goodwin's work for Ormet Corporation and its **Executive Officers** from 1973 to 1976, Mr. Goodwin was exposed daily to high levels of benzene when he worked in the pump room and as a millwright. He was exposed to high levels of benzene from products manufactured, distributed or sold by the Defendant, **Texaco Inc.**

12.

Mr. Goodwin sustained tissue damage from each exposure to benzene, resulting in

distinct bodily injuries in every year from 1973 through 1976.

13.

As a direct and proximate result of exposure to benzene and products containing high levels of benzene, Mr. Goodwin suffered injury including, but not limited to, multiple myeloma, physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life.

14.

The causal connection between Mr. Goodwin's injuries and benzene has been scientifically documented since 1948.

15.

The development of multiple myeloma as a result of chronic benzene exposure has been well documented, and death resulting from multiple myeloma has been associated with benzene exposure.

16.

Multiple myeloma is a malignant disease that affects the blood and bone marrow. Scientists have also linked other blood disorders such as myelodysplastic syndrome (MDS), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

17.

The latency period for the development of injuries after benzene exposure has been known to range from less than 5 years to in excess of 50 years.

18.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation

products are a result of its insidious influence on the blood forming system.

19.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in industry in the United States, as well as the named Defendant and their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, lymphoma and other blood disorders.

20.

Through industry and medical studies unknown to plaintiffs, the Defendant knew or should have known of the health hazards inherent in the products it manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the Defendant constitutes gross negligence and demonstrate a reckless disregard for the rights and safety of others. Furthermore, the Defendant committed numerous tortious acts that include, without limitation, negligently misrepresenting, concealing, suppressing, omitting material information about the health effects of benzene and failing to inform users of precautionary measures to be used when handling or near benzene, as specifically alleged below.

21.

Exposure to benzene occurs through inhalation and skin contact. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

22.

Long-term benzene exposure may adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors,

confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

23.

In the September 1948 Edition of the American Petroleum Institute, *Toxicological Review Benzene*, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, the review stated that benzene use was extensive in the petroleum industry.

24.

As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. In 1948, the American Petroleum Institute reported that "In as much as, the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero." 1948 API, *Benzene Toxicological Review*. The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.

25.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may potentially be exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are

unavoidably encountered in operations—such as the cleaning in vats or tanks—a supplied air respirator or self-contained breathing apparatus with full face shield should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves should be used.

26.

**Texaco, Inc.** knew or should have known about the causal relationship between benzene and cancer-related illnesses. The Defendant failed to warn Mr. Goodwin and other similarly situated workers about the health hazards associated with benzene.

27.

The Defendant has committed negligence, gross-negligence and is strictly liable for the damages caused by its products. Defendant is at fault for Mr. Goodwin's injuries as outlined in this complaint.

## Liability of Ormet Corporation's Executive Officers

28.

The exposure of petitioner to benzene and benzene containing products as a result of the acts or omissions of Ormet Corp. **Executive Officers** was a substantial contributing cause in development of his Multiple Myeloma. Ormet Corp. **Executive Officers** had the responsibility for protecting the health and safety of the employees working at its facilities.

29.

When the petitioner inhaled, dermally absorbed, or otherwise ingested, these dangerous and toxic substances including but not limited to benzene and benzene containing chemicals it caused irreparable harm and progressive damage to the blood and blood forming organs, including multiple myeloma.

30.

Louisiana C.C. 2315 provides, "Every act whatever of man that caused damages to another obliges him by whose fault it happened to repair it." Ormet Corp. **Executive Officers**, are liable to Mr. and Mrs. Goodwin for the damages caused by Mr. Goodwin's exposure to benzene containing products and other hazardous substances while performing work at the Ormet facility in Burnside, Louisiana.

31.

The Ormet Corp. **Executive Officers** had the responsibility to provide Mr. Goodwin with a safe place to work, and adequate protective equipment with which to perform his work. They negligently failed to discharge said responsibility. Ormet's **Executive Officers** were negligent in the following, non-exclusive particulars:

   a.   by not requiring petitioners to wear the proper respiratory protective equipment when working with benzene, benzene containing products and butadiene;

   b.   by failing to make available to the petitioners proper respiratory protective equipment for use when petitioner was in a benzene and butadiene contaminated work environment;

   c.   by failing to warn or inform petitioner regarding the health hazards involved in the inhalation of benzene, benzene containing products and butadiene;

   d.   by failing to implement the proper engineering controls, including providing adequate ventilation, to eliminate and/or reduce the hazards of exposure to benzene, benzene containing products;

   e.   by failing to implement a proper safety program;

    f.    by failing to train and instruct petitioner regarding the purpose, use, and limitations of the respiratory protective equipment;

    g.    by failing to maintain, repair, replace and make available necessary respiratory protective equipment and/or the components thereof;

    h.    by not requiring or providing protective clothing for dermal exposure;

    i.    by failing to monitor and/or evaluate the fume levels in the work environment to ensure that the plaintiff was not exposed to dangerous levels of benzene, benzene containing products, and butadiene;

    j.    and other acts of negligence which may be revealed at the trial of this matter.

Furthermore, Ormet Corporation's **Executive Officers** failed to warn the petitioner and concealed the dangers of benzene, and benzene containing products in order to avoid litigation and costs associated with providing a safe work environment.

32.

Ormet Corporation and its insurers are liable as an indemnitors of Ormet **Executive Officers** for their acts and omissions to the Petitioner.

**Negligence**

33.

The Defendant breached duties owed to Mr. Goodwin and the plaintiffs to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

    a.  to design their products to contain available and suitable products other than benzene;

    b.  to sell benzene-free products;

    c.  to select materials other than benzene for inclusion into their products;

d. to provide alternative solvents other than benzene'

e. to fully test their respective products for health risks associated with the normal and intended use of their products;

f. to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;

g. to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

h. to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

i. to inspect fully and adequately the design, testing, instructions and warnings that should have accompanied the sale of such products;

j. to refrain from negligently misrepresenting the safety and health risks of the products they sold;

k. to inquire about or investigate the safety and health risks of the products they sold;

l. to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

m. other acts which may be revealed at the trial of this matter.

34.

As a direct and proximate result of the Defendant's negligent breach of its duties, the Plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the defendant encompasses the risk of the injuries sustained by the Plaintiffs. The duties breached were intended to protect the Plaintiffs from the type of injuries they have sustained. The

Defendant's breaches of its duties constitute the direct legal cause of the injuries to the Plaintiffs.

**Strict Product Liability**

35.

Exposure to benzene from the Defendant's products and/or products under its care, custody and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendant sold or supplied these products. Defendant, **Texaco Inc.** is strictly liable for the damages caused by their products.

36.

The Defendant's products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left **Texaco Inc.'s** control.

37.

Mr. Goodwin was an intended and foreseeable user of the alleged defective products. Defendant could reasonably have anticipated the damages and losses to the Plaintiffs.

38.

Defendant, **Texaco Inc.,** sold its products with conscious disregard for the safety of users of its products and other persons who might be injured thereby.

39.

**Texaco Inc.** is strictly liable for the damages caused by its products because its products were (1) Unreasonably dangerous per se; 2) Unreasonably dangerous in construction; 3) Unreasonably dangerous in design; and (4) unreasonably dangerous by reason of failure to warn. *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La. 02/24/86).

40.

Defendant's products were unreasonably dangerous in construction or composition.  At the time these products left control of the manufacturer, they contained high concentrations of a cancer causing substance, benzene, which made the products more dangerous than they was designed to be.

41.

Defendant's products were unreasonably dangerous per se.  The danger of use of the product, whether foreseeable or not, outweighed the utility of the product.

42.

Defendant's products were unreasonably dangerous in design.  These products were manufactured with constituents that contained high levels of benzene.  Less toxic and cheaper design alternatives were available at the time of manufacture.

43.

Defendant's products were unreasonably dangerous in design. **Texaco Inc.** failed to conduct adequate research and investigation into the health effects of their products.

44.

As the product designer and manufacturer, **Texaco Inc.,** had a duty to keep abreast of scientific knowledge and discoveries.  Defendant had a duty to test and inspect its products.  Defendant breached these duties.

45.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by Defendant, Mr. Goodwin inhaled benzene fumes and other harmful substances emitted by the normal use of the products,

proximately causing multiple myeloma related to benzene exposure from which he suffers and for which these defendant is strictly liable under Louisiana law.      .

46.

The defects in the Defendant's products and equipment include, but are not limited to, the following:

a. The products were unreasonably dangerous per se in that the damage in fact of using the product outweighs the utility of the product under normal, foreseeable use.

b. The products are unreasonably dangerous per se because the cost of injuries as a result of the benzene content of the products, outweighed the benefits of use of benzene in the product;

c. inherent characteristics (known to the defendant) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

d. lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

e. lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

f. lack of sufficient inspections by the Defendant of its products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

g. lack of reasonable inspections by the defendant of its products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

h. lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;

a. failing to design their respective products so as not to emit dangerous levels of benzene;

b. Providing benzene containing products which, by virtue of their design and/or manufacture and/or composition, were unreasonably dangerous under reasonably anticipated use;

c. Failing to properly test the benzene containing product to property evaluate the level of emissions of benzene under foreseeable conditions for extended periods of time;

d. Failing to warn each user of the unreasonably dangerous nature of the benzene containing products used by the Plaintiff, or warn adequately of the presence of

excessive levels of emissions of benzene and the hazards associated with the excess levels of emissions of benzene in the manufacturer's products.

i. defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and

j. other acts which may be revealed at the trial of this matter.

### Damages Sustained by Mr. Goodwin's Wife and Children

47.

Due to the Defendant's fault as described above and because of the benzene-related injuries of Mr. Goodwin, the plaintiffs have suffered loss of consortium, loss of services, loss of affection, and loss of nurture and are entitled to damages as are reasonable.

48.

Due to the Defendant's fault described above, Mrs. Goodwin and children have suffered and will continue to suffer emotional distress. The mental distress caused by Mr. Goodwin's terminal illness, will adversely affect the performance of his children Ian and Haiden Goodwin in their studies at college.

### Compensatory Damages

49.

As a result of the acts and omissions of the Defendants, the Plaintiffs are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages include but are not limited to:

a. Past, present, and future physical pain and suffering;

b. Past, present, and future mental anguish and emotional distress;

c. Disfigurement and embarrassment;

d. Physical impairment;

e. Past and future earnings;

f. Lost earning capacity;

g. Physical Impairment;

h. Physical and mental disabilities;

i. Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

j. Loss of enjoyment of life;

k. Fear of cancer and other diseases;

l. Expenses to train, educate or otherwise enable the plaintiffs to be gainfully employed;

m. Loss of society, consortium, companionship, services, nurture, and love and affection;

n. Wrongful death damages; and

o. Survival damages.

## Jury Trial

50.

The plaintiffs pray for trial by jury.

## Discovery Rule

51.

The prescriptive period does not start until the plaintiffs knew or should have known that the plaintiff's Multiple Myeloma was caused by benzene. Here, the results of the plaintiff's exposure to benzene was inherently undiscoverable. The cancer took years to develop, and even when the symptoms did manifest, the plaintiff did not detected the link between his benzene exposures and his malignancies.

52.

Mr. Goodwin did not learn of a possible link between benzene exposure and his malignancy until August of 2011, which is less than one year from filing of this complaint. Mr. Goodwin's cancer was the product of exposure to these chemicals over a period of time rather than from a single point in time. Hence, the limitation period didn't start until August of 2011 when the plaintiff learned about the cause of his Multiple myeloma.

**Prayer**

53.

For these reasons, the plaintiffs ask that **Texaco Inc., Employers Insurance Co. of Wausau**, **and ABC Insurance Company** as insurers of Ormet Corporation and its **Executive Officers** be cited to appear and answer, and that on final trial, the plaintiffs have:

a. Judgment against **Texaco Inc., Employers Insurance Co. of Wausau,** and **ABC Insurance Company** as insurers of Ormet Corporation and its **Executive Officers** for any and all damages and the actual and special damages suffered by the plaintiffs as a result of defendant's conduct;

b. Costs of suit;

c. Prejudgment and post-judgment interest at the highest rate provided by law; and

d. All other and further relief to which the plaintiffs may be entitled.

Respectfully Submitted:

/s/ L. Eric Williams, Jr.
 L. Eric Williams, Jr. (La. Bar No. 26773)
**Williams Law Office, LLC**
433 Metairie Road, Ste. 302
Metairie, Louisiana  70005
Telephone:  (504) 832-9898
Facsimile:  (504) 832-9811
E-mail:     eric@amlbenzene.net

&

*s/ Amber E. Cisney*
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28821
**RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 834-8500
Facsimile: (504) 834-2609
E-mail: rick@rjfernandezlaw.com
           amber@rjfernandezlaw.com
**ATTORNEYS FOR PLAINTIFF**

**Please Serve:**

**Texaco, Inc.**
575 Market St.,
 San Francisco, CA 94105

**Employers Insurance Company of Wausau**
Through its agent for service of process
The Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809